UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFONSO L., | ) | Case No. 5:24-cv-00840-SP |
|        Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | ) | |
|        Defendant. | ) | |

## I.
## INTRODUCTION

On April 22, 2024, plaintiff Alfonso L. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of an application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the administrative law judge's ("ALJ") residual functional capacity ("RFC") determination was supported by substantial evidence; and (2) whether the ALJ failed to properly evaluate plaintiff's

subjective symptom testimony.  Plaintiff's Brief in Support of Complaint ("P. Mem.") at 4-22;[1] *see* Defendant's Brief ("D. Mem.") at 2-14.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's RFC determination was supported by substantial evidence and the ALJ properly evaluated plaintiff's subjective symptom testimony.  Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 48 years old on his alleged disability onset date, July 3, 2020.  AR at 64.  He attended some college and has past relevant work as a receiving clerk.  AR at 57, 226.

On July 8, 2021, plaintiff filed an application for a period of disability and DIB due to osteoarthritis, back pain, chondromalacia of the patella, tension headaches, post-traumatic stress disorder ("PTSD"), anxiety, planta facial fibromatosis, sleep apnea, allergic rhinitis, pain in the testicle, tinea pedis, varicocele, diabetes, SARS COVID infection, hypercholesterolemia, fatigue, migraine headaches, shortness of breath, and pain in the knees and ankles.  AR at 65.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which plaintiff filed a request for a hearing.  AR at 64-86, 88-109, 126.

On August 1, 2023, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR at 38-63.  The ALJ also heard testimony from David Rinehart, a vocational expert.  AR at 56-62.  On September 11, 2023, the ALJ denied plaintiff's claim for benefits.  AR at 17-33.

---

[1] The court notes plaintiff failed to comply with Local Rule 11-8 by filing a memorandum of points and authorities that exceeded 10 pages without an indexed table of contents or table of authorities.  The court excuses this lack of compliance in this case; however, plaintiff's counsel is reminded to ensure all papers submitted to the court are in compliance with the local rules going forward.

2

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that claimant had not engaged in substantial gainful activity since July 3, 2020, the alleged onset date. AR at 19.

At step two, the ALJ found plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, pulmonary fibrosis, headaches, major depressive disorder, generalized anxiety disorder, PTSD, and substance abuse disorder (alcohol) in reported remission. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. AR at 21.

The ALJ then assessed plaintiff's RFC and determined plaintiff could perform medium work with the limitations that plaintiff could: lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; frequently push and pull within the weight limits indicated for lifting and carrying with the bilateral lower extremities; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat or cold, dust, odors, fumes, pulmonary irritants, and hazards such as heavy moving machinery or unprotected heights; could occasionally interact with supervisors and coworkers; have no interactions with the public; and occasionally deal with changes in a routine work setting. AR at 23.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a receiving clerk. AR at 30-31.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including hand packager, electronics worker, and office helper. AR at 31-32. Consequently, the ALJ determined plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 32.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

//
//

## IV.

## DISCUSSION

### A.  The ALJ's RFC Determination Was Supported by Substantial Evidence

Plaintiff first argues the ALJ's RFC determination was not supported by substantial evidence. P. Mem. at 4-15. In particular, plaintiff argues: (1) the ALJ erred by "ignoring the voluminous medical evidence of record in this case and instead relying on the opinions of the non-examining/non-treating state agency consultants [sic] opinions" to conclude plaintiff could perform medium work with postural limitations; and (2) the ALJ erred in finding plaintiff limited to simple instructions when the record supported more extensive mental limitations. P. Mem. at 11, 15.

Residual functional capacity is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. 20 C.F.R. § 404.1545(a)(1)-(2); see Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

#### 1.  The ALJ Properly Relied on the Medical Opinions in the Record

The evidence an ALJ relies on in an RFC assessment includes medical evidence and opinions. 20 C.F.R. § 404.1545(a)(3). An ALJ considers the persuasiveness of the medical opinions and findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(b)-(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). The ALJ may, but generally is not required to, explain how she or he

considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). But when two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is then required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

In determining plaintiff's physical exertional limitations, the ALJ relied in part on the opinions of internal medicine consultative examiner Dr. Luay Alalawi and the State Agency medical consultants. AR at 29. In his March 12, 2022 opinion, Dr. Alalawi opined plaintiff had the ability to perform a range of medium work, namely, that he could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours in an eight-hour workday, and frequently push, pull, bend, stoop, kneel, crawl, walk on uneven terrain, climb ladders, and work at heights. AR at 1222. With the exception of the findings that plaintiff had no sitting limitations and could frequently walk on uneven terrain, climb ladders, and works at heights, the ALJ found Dr. Alalawi's findings persuasive because the ALJ determined that these limitations were both "supported by the objective medical evidence and consistent with the evidence from other medical and nonmedical sources." AR at 29.

The State Agency medical consultants also opined plaintiff could perform a range of medium work, including: lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; unlimited pushing and pulling other than as stated for lifting and carrying; frequent climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; occasional climbing of ladders, ropes, or scaffolds; and unlimited balancing. AR at 78, 101-02. The ALJ found portions of their opinions to be unpersuasive, but found their opined exertional limitations to be persuasive because they were "supported by the objective medical evidence and consistent with evidence other medical and non-medical sources." AR at 29.

Plaintiff essentially argues the ALJ should have rejected these largely consistent medical opinions and adopted a more restrictive RFC based on the raw medical data contained in plaintiff's medical records. P. Mem. at 11. Although plaintiff summarizes his medical history at length, he fails to point to any physician who opined he was incapable of medium work or was more limited in his exertional capabilities. Plaintiff also fails to explain how the ALJ was supposed to assess his functional limitations absent such an opinion, given that an ALJ is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Hamasyan v. Berryhill*, 2018 WL 6025596, at *5 (C.D. Cal. Nov. 16, 2018) (the ALJ could not properly rely on his own lay understanding of medical records and exams to gauge the functional limitations); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data).

      Plaintiff makes no argument that the ALJ improperly evaluated the supportability and consistency factors for either Dr. Alalawi's opinion or the opinions of the State Agency medical consultants. The ALJ evaluated the persuasiveness of the medical opinions before her and properly incorporated the portions of the opinions she found persuasive into plaintiff's RFC, while explaining why she rejected certain other portions that, for example, did not account for later received evidence. *See, e.g.,* AR at 29. Plaintiff's mere disagreement with the medical opinions is insufficient to show that the ALJ erred in her RFC determination.

//
//

## 2. The ALJ's Limitation to Simple Instructions Is a Reasonable Interpretation of the Record

Plaintiff also argues "[i]t is completely unclear" how the ALJ made her RFC determination with respect to plaintiff's mental impairments. AR at 13-14. In particular, plaintiff argues the ALJ fails to reconcile her RFC determination that plaintiff could perform work with "simple instructions" with the opinion of the consultative psychiatric examiner, who found plaintiff was moderately limited in his ability to perform simple, one- to two-step instructions over an eight-hour period. *Id.*

On April 1 2022, plaintiff underwent a comprehensive psychological evaluation performed by Dr. Kara Cross, a clinical psychologist. AR at 1224-29. Dr. Cross opined plaintiff: was mildly limited in his ability to understand, remember, and carry out simple one- to two-step instructions, maintain concentration and attention, and associate day to day work activity; was moderately limited in his ability to understand, remember, and carry out simple one- or two-step job instructions over an 8-hour day or 40-hour work week without emotionally decompensating, do detailed and complex tasks, do detailed and complex tasks over an 8-hour day or 40-hour work week without emotionally decompensating, maintain reasonable persistence and pace, maintain regular attendance in the workplace and perform activities on a consistent basis, and relate to coworkers and the public in an appropriate manner; and had no limitations in his ability to understand safety rules and regulations to maintain safety on the job, accept instructions from supervisors, or perform work activities without special or additional supervision. AR at 1228-29. The ALJ found Dr. Cross's opinion to be persuasive because her opinion was "supported by the examination of the [plaintiff], references to specific findings, and well-supported explanations," and was "consistent with evidence from other medical or nonmedical sources." AR at 29-30.

In her RFC determination, the ALJ stated plaintiff could "understand, remember and carry out simple instructions; occasionally interact with supervisors and coworkers; [have] no interactions with the public; and occasionally deal with changes in a routine

8

work setting." AR at 23.  Plaintiff argues that the ALJ's failure to explain the contradiction between the RFC's limitation to "simple instructions" and Dr. Cross's opinion that plaintiff has moderate limitations in his ability to understand, remember, and carry out simple one- to two-step instructions over an 8-hour day 40-hour work week constitutes error.[2]  P. Mem. at 13-14.  The court disagrees.

Defendant directs the court to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), and *Kitchen v. Kijakazi*, 82 F.4th 732 (9th Cir. 2023), to resolve the discrepancy. D. Mem. at 12.  But neither case is directly on point.  In *Stubbs-Danielson*, the court held merely that an RFC containing a restriction to simple tasks adequately encapsulates moderate restrictions to "concentration persistence, or pace."  539 F.3d at 1174.  The court said nothing about a restriction to simple tasks adequately capturing moderate restrictions in understanding.  *See id.* at 1173-74.  Moreover, in the portion of *Kitchen* cited by defendant, the court discussed the plaintiff's mild to moderate mental impairments in the context of his subjective symptom testimony and nowhere concluded a limitation to simple instructions adequately captured moderate limitations in understanding.  *See* 82 F.4th at 739.  Accordingly, neither case in on point.

Nonetheless, defendant also correctly points out that an RFC determination is designed to reflect an individual's maximum capabilities, not their minimum capabilities. *See* 20 C.F.R. § 404.1545(a)(1).  Here, Dr. Cross did not opine that plaintiff was incapable of understanding and following simple instructions.  Rather, she opined plaintiff has moderate limitations in his ability to understand simple one- to two-step instructions.  AR at 1228.  Moreover, she also opined plaintiff retains some ability to follow and complete detailed and complex tasks, since he has only moderate limitations

---

[2] The court notes part of the confusion may be due to an apparent typographical error made by the ALJ.  The ALJ stated Dr. Cross opined that plaintiff "had mild limitation in ability to understand, remember, and carry out simple one or two step task instructions, and he had moderate limitations in in [sic] ability to understand, remember, carry out simple one or two step job instructions."  AR at 29.  The ALJ may have accidentally neglected to include the phrase "over an 8-hour day 40-hour work week without emotionally decompensating" at the end of the last sentence just quoted.

9

in his ability to do so. *See id.* It is thus inaccurate to state Dr. Cross limited plaintiff to one- to two-step instructions in any way. The ALJ permissibly determined that a limitation to simple instructions balanced plaintiff's moderate limitations with respect to one- to two-step instructions with his apparent ability to perform at least some detailed and complex tasks. *See Dunn v. O'Malley*, 2024 WL 3439583, at *2 (9th Cir. July 17, 2024) (holding that because doctors opined plaintiff could perform both one- to two-step tasks and simple tasks, "the ALJ's decision to adopt the broader limitation was reasonable"). Accordingly, the ALJ's limitation of plaintiff to simple instructions was a reasonable interpretation of the record.

In sum, the ALJ properly relied on the medical opinions and reasonably determined plaintiff could perform medium work with certain additional limitations, and that plaintiff was limited to work with simple instructions. As such, the ALJ's RFC determination was supported by substantial evidence.

**B.    The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony**

Plaintiff next argues the ALJ improperly evaluated plaintiff's subjective symptom testimony and failed to provide a clear and convincing reason to reject his testimony. P. Mem. at 16-22. In particular, plaintiff argues that the ALJ rejected his testimony solely because the ALJ found the testimony was inconsistent with the medical record. P. Mem. at 16.

The court looks to Social Security Ruling 16-3p for guidance on evaluating plaintiff's alleged symptoms.[3] In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an

---

[3]    "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

10

examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id*.

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id*. (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

At the first step here, the ALJ found plaintiff's medically determinable impairments could be reasonably expected to cause plaintiff's alleged symptoms. AR at 24. At the second step, because the ALJ did not find evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR at 25.

The ALJ first reasoned that the objective medical evidence and other evidence in the record did "not support the level of symptomology that the [plaintiff] alleged" and was sometimes inconsistent with plaintiff's testimony. AR at 25. Had the ALJ found only that plaintiff's subjective testimony was not fully supported by the objective medical evidence, she would have erred. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("an ALJ cannot insistent on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise"). But "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may . . . weigh it as undercutting such testimony." *Id*. The Ninth Circuit has made clear "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* at 499 (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)) (internal quotation marks omitted).

The ALJ identifies several pieces of testimony that are contradicted by the record. For example, the ALJ notes that while plaintiff testifies his impairments make it difficult to stand and walk, multiple medical records dating from July 3, 2020 through May 17, 2023 indicate plaintiff walked with a steady gait. *See e.g.*, AR at 24-25, 1183, 1253, 1275, 1577, 1681. The ALJ also notes that while plaintiff reported that he was unable to be around people and had difficulty concentrating, several of plaintiff's mental status examinations show plaintiff was cooperative and calm, made eye contact, had a linear, goal oriented thought processes, lacked disorganized thoughts, and had fair insight and

1 appropriate cognition. AR at 25, 559, 696, 763, 1644. The ALJ further notes that
2 plaintiff's complaints of numbness and tingling of the feet is sometimes contradicted by
3 the record. AR at 25. Although the record contains medical notes documenting
4 plaintiff's complaints, the record also contains several notes dating from January 2020
5 through April 2023 stating plaintiff had no focal weakness, numbness, or tingling. AR at
6 1187, 1630, 1876. Other neurological notes show plaintiff had intact sensation and an
7 "[e]ssentially [n]ormal neuro exam." AR at 466, 779, 948, 1411, 1633, 1789. Taken
8 together, these inconsistencies between plaintiff's testimony and his medical records
9 constitute a clear and convincing reason to reject his subjective symptom testimony.

10       The ALJ additionally discounted plaintiff's testimony because it was inconsistent
11 with his reported activities of daily living. AR at 25; *see Tommasetti v. Astrue*, 533 F.3d
12 1035, 1039 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and
13 daily activities is a basis to discount his testimony). The ALJ reasoned plaintiff's ability
14 to drive on an occasional basis, visit his mother, go to the park, date, travel, dine out, and
15 drive to the beach with his girlfriend are inconsistent with his testimony. AR at 25.
16 Indeed, although some of plaintiff's activities may be consistent with extreme social
17 anxiety, other activities, including shopping, dining out, going to the church, visiting the
18 park, and dating are inconsistent with plaintiff's statement that he "can't be around other
19 people." *See* AR at 25, 219-20. These contradictions between plaintiff's testimony and
20 his daily activities constitute another clear and convincing reason to reject plaintiff's
21 subjective symptom testimony. *See Smartt*, 53 F.4th at 499 (Plaintiff's "daily activities
22 may be grounds for discrediting the claimant's testimony to the extent that they
23 contradict claims of a totally debilitating impairment.") (internal quotation marks and
24 citation omitted).

25       Accordingly, by providing two clear and convincing reasons to discount plaintiff's
26 testimony, the ALJ properly evaluated plaintiff's subjective symptom testimony.
27 //
28

V.

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: September 29, 2025

_____
SHERI PYM
United States Magistrate Judge